UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

<u>MEMORANDUM AND ORDER</u>

    - against -

18-CR-197 (KAM)

WARREN FLEMING,

                Defendant.

----------------------------------X

        Before the court is defendant Warren Fleming's July 23, 2018, Motion to Suppress Evidence. (*See* ECF No. 21, Motion to Suppress.) In his motion, defendant asks the court to suppress physical evidence, including a firearm and crack cocaine, and defendant's statement obtained by the police incident to his search and subsequent arrest on April 4, 2018. (ECF No. 21, Motion to Suppress; ECF No. 21-1, Declaration in Support of Motion to Suppress.) On August 13, 2018, the government opposed defendant's motion and argued that defendant was not entitled to a hearing as defendant failed to raise any issues of fact regarding the issuance of the ICard, which indicated there was probable cause for his arrest, or the circumstances of Mr. Fleming's arrest. (ECF No. 22, Gov't. Opposition to Motion to Suppress, at 5.) Specifically, the government argued that defendant had not submitted an affidavit "alleging facts which would require the suppression of [evidence] if those facts were proved at a hearing." (*Id.*

(citing *United States v. Aparo*, 221 F.Supp.2d 359, 369 (E.D.N.Y. 2002) (denying motion to suppress post-arrest statement where defendant's motion papers failed to establish factual basis for suppression).) On August 24, 2018, defendant replied to the government's opposition. (ECF No. 23, Def. Reply in Support of Motion to Suppress.) On October 11, 2018, the court issued an order stating that the hearing on defendant's motion to suppress, scheduled for October 24, 2018, would be limited to the facts surrounding Detective Fusco's issuance of the ICard and Officer Rivera's knowledge regarding the ICard at the time of defendant's arrest.

On October 19, 2018, the government filed a motion *in limine* seeking to preclude cross examination of Detective Rivera and Officer Fusco regarding substantiated CCRB complaints and civil actions the two law enforcement officers were party to in the past. (*See* ECF No. 27, Gov't. First Motion *in Limine*.) On October 24, 2018, the court heard argument from the parties on defendant's motion to suppress and the government's motion in limine. The court granted in part and denied in part the government's motion *in limine* on the record, and then conducted an evidentiary hearing and ordered post hearing briefing. (*See* Suppression Hearing Tr. "Tr." at 5-7,85-88.) The parties post hearing briefing was complete on December 11, 2018. (*See* ECF No. 34, Def. Mem. in Further Support of Motion to Suppress; ECF

No. 35, Opposition to Def. Mem. in Further Support of Mot. to Dismiss; ECF No. 36, Reply in Further Support of Motion to Suppress.)  For the reasons stated below, defendant's motion to suppress is denied.

## I.    Background

### a. The March 2018 Harassment Complaint

The facts and evidence adduced at the hearing are as follows.  On March 31, 2018, the mother of defendant's two young daughters (the "victim") called 911 at approximately 12:12 a.m. and reported that her ex-boyfriend had broken a window, pushed her to the floor and hit her as he attempted to enter her apartment.  (ECF No. 22 at 2.)  The victim identified defendant by name as the assailant and provided 911 with a description of his appearance.  (*Id.*)  She stated that defendant smelled of alcohol and indicated that he lived in an apartment on Osborn Street in Brooklyn.  (*Id.*)  The victim also indicated that she had previously obtained an order of protection against defendant.  (*Id.*)  New York Police Department ("NYPD") Officer Keon Lawson responded to the scene, the victim's home in Brooklyn, where the victim informed Officer Lawson that defendant attacked her and texted her to say he was going to kill her and her fourteen-year-old son, placing her in fear for her life.  (*Id.* at 2-3.)  Officer Lawson completed a Domestic Incident Report after he responded to the scene, indicating that

the defendant arrived at the victim's apartment, attempted to
enter the apartment, and fought with the victim verbally in
addition to texting the victim and threatening to kill her.
(ECF No. 34-1, GX 4, March 31, 2018 Domestic Incident Report, at
1.)  The victim provided Officer Lawson with a signed statement
that stated that defendant first banged on her window, and when
she opened the door, he pushed her into the hallway where they
had a physical tussle as she tried to push him out of her home
and close her door.  (*Id.* at 2.)  After the victim pushed him
out of the home and closed the door, defendant hit the middle
panel of glass in the door, and broke the glass in her door.
(*Id.*)  The victim yelled to her son to call the police, and the
defendant then called the Victim, threatening to kill her and
her fourteen-year-old son.  (*Id.* at 2.)  Officer Lawson
indicated in the Domestic Incident Report that aggravated
harassment was an offense with which defendant could be charged
and then entered a complaint in the NYPD database describing the
incident.  (*See* GX 4, Domestic Incident Report; ECF No. 34-2, GX
1, March 31, 2018 Omniform System Complaint.)

NYPD Detective Thomas Fusco investigated the victim's
complaint later the same day and interviewed the victim at
approximately 9:00 a.m.  At the suppression hearing on October
24, 2018, Detective Fusco testified that he had worked with the
NYPD for thirteen years, and had been a member of the 75th

4

Precinct's Domestic Violence Squad for eight months. (Tr. at 14:1-16.) Detective Fusco testified that as a member of the Domestic Violence Squad, he investigates domestic violence incidents after police reports are generated and entered into the NYPD's case management system, which is referred to as the ECMS system. (*Id.* at 15:5-18.) Detective Fusco saw the victim's Omniform System Complaint, determined that he should follow up, and assigned himself the case through the ECMS system. (*Id.* at 20:6-12, 21:19 - 25-22:1-5.) He contacted the victim by phone the morning of the incident to discuss what occurred. (Tr. at 22:11-25.) During the 9:00 a.m. interview, the victim informed Detective Fusco that defendant came to her home, had an argument with the victim and pushed his way into her apartment, verbally threatened to kill her and her son, broke the glass in the top panel of the front door of her residence and left on a bicycle. (*See* ECF No. 22 at 3; Tr. at 22:24-23:7.) Detective Fusco testified that he determined the victim's account was credible based on the telephone interview taken together with the information in the police Omniform System Complaint. (Tr. at 23:14-25:3.)

At approximately 9:10 a.m., Detective Fusco submitted a perpetrator investigation card ("ICard") for defendant, which appeared in NYPD databases and alerted NYPD officers that there was probable cause to arrest defendant for aggravated harassment

in the second degree.[1]  (*Id.; see also* Tr. at 16:1-25; GX 2,
ICard.)  At the suppression hearing, Detective Fusco explained
that there were two types of ICards: a "probable cause" ICard
and a "suspect only" ICard.  (*See* Tr. at 16: 16-19.)  "Probable
cause" ICards signal that there is probable cause for a person's
arrest, whereas "suspect only" ICards show that the subject of
the ICard is a person of interest.  (*Id.*)  After interviewing
the victim of defendant's attack and making a credibility
determination, Detective Fusco determined that there was
probable cause to arrest defendant and to issue a probable cause
ICard for aggravated harassment against defendant.  (Tr. at
24:14-27:3.)  Although Detective Fusco believed there was also
probable cause to issue the ICard for criminal mischief, he
testified that only one crime can be selected when an ICard is
generated in the ECMS system.  (*Id.* at 26:4-9.)

The ICard indicated that defendant was the named
perpetrator and had texted the victim stating, "I'm going to
kill you."  (*See* ECF No. 22 at 3.)  The ICard also provided
defendant's full name, date of birth, photograph and address and

---

[1] An NYPD investigation card or ICard is an "internal NYPD form issued by an
officer when there is a suspect, witness or perpetrator to be investigated."
(*See* ECF No. 22 at 3 n. 3 (citing *Johnson v. City of New York*, 15-CV-1625,
2017 WL 1476139, at *2 (E.D.N.Y. April 24, 2017)); *see also Henning v. City
of New York*, 09-CV-3998, 2012 WL 2700505, at *1, n.2 (E.D.N.Y. July 5, 2012)
("The NYPD issues I-cards, *inter alia*, to give notice of persons sought for
whom there is probable cause for arrest.").)

indicated that defendant had previously been arrested for criminal possession of weapons. (*See Id.*; Tr. at 26:4-15.)

### b. The April 2018 Search and Seizure[2]

On or around April 4, 2018, Officer Henry Rivera of the NYPD 73rd Precinct was investigating drug trafficking activity and had identified defendant as a person involved in his investigation. (ECF No. 22 at 3.) Officer Rivera testified that he was an Assistant Field Intelligence Officer at the time of defendant's arrest and had over twelve years of experience working for the NYPD at the time. (Tr. at 72:15-73:1-6.) On the morning of April 4, 2018, as part of his investigation, Officer Rivera searched an NYPD database to see if there was any ICard issued for defendant, because he was "keeping current with the status of Mr. Warren Fleming, as [he] was conducting an investigation into [Mr. Fleming]." (Tr. at 74:4-12.) Officer Rivera saw the ICard for defendant in the ECMS system and decided to patrol the area near defendant's last known address to look for and arrest defendant in connection with the aggravated harassment described in the ICard. (ECF No. 22 at 3; *see also* Tr. at 76:6-13.)[3]

---

[2] The facts regarding defendant's April 4, 2018 arrest and seizure of evidence are taken from those asserted in the government's Opposition to the Motion to Suppress, ECF No. 22, unless otherwise noted.
[3] Detective Fusco testified at the suppression hearing that he was not aware that defendant was under investigation by his precinct on the day he issued the ICard, and had not spoken to Officer Rivera or anyone else in the intelligence unit. (*See* Tr. at 37:21-38:4.)

Three other NYPD officers assigned to the 73rd
Precinct joined Officer Rivera on patrol.  (ECF No. 22 at 3.)
Officer Rivera drove, Sergeant John McGiveney sat in the front
of the vehicle, and Officers Daniel Berardi and Christopher
Furegno sat in the rear of the vehicle.  (*Id.*)

Officer Rivera observed a man, who matched the
description of defendant in the ICard, riding a bicycle towards
the building located at defendant's last known address.  (*Id*. at
4.)  Officer Rivera was aware of what defendant looked like
prior to April 4, 2018, and had both seen defendant in
photographs and in person prior to the date of the arrest.  (*See
Id*. at 74:13-22.)  Officer Rivera pulled the patrol car over to
face the building and defendant looked at the patrol car when it
stopped.  (*Id.*)  Officer Rivera was in his vehicle approximately
forty feet from defendant when he saw defendant at 3:30 p.m., in
daylight, with a clear and unobstructed view.  (*Id*. at 76:23-
77:18.)  Officer Rivera recognized defendant as the subject of
the ICard and of his drug trafficking investigation and stated,
"he's under," to the other officers riding with him, which they
understood to mean that there was probable cause to arrest
defendant.  (*Id*. at 79:24-81:4.)

The officers exited the vehicle and approached
defendant who first put his hands in the air, but then reached
towards his own waist.  (ECF No. 22, Gov't. Opp., at 4.)

Officer Berardi ordered defendant not to reach for anything and grabbed defendant's wrist, at which point defendant stated "I have a gun on me." (*Id.*)  Officer Furegno removed a loaded semiautomatic pistol from defendant's waistband and Officer Rivera placed defendant under arrest.  (*Id.*)  Officer Rivera searched defendant incident to the arrest, and discovered twelve packets of crack cocaine, a cell phone and $392 in defendant's pockets.  (*Id.*)

Based upon the evidence seized during the April 4, 2018 search, defendant was indicted for possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and possessing a firearm after previously being convicted of a felony in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).  (*See* ECF No. 10, Indictment, at 1-2.) Defendant asserts, and the government does not dispute, that defendant was not stopped on April 4, 2018 due to the police witnessing defendant partaking in criminal activity or in possession of contraband.  (*See* ECF No 21-2, Defendant Declaration, at 1.)  Rather, the government asserts that the ICard entered by Detective Fusco provided probable cause to arrest defendant because it was based on a credible complaint by a witness identifying defendant as the perpetrator of a crime.

(*See* ECF No. 21-2, Defendant Declaration, at 1; ECF No. 22, Gov't. Opp.)

## II. Legal Standard

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. "Supreme Court precedent, binding on this and all courts in this land, establishes that the 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the [Fourth] Amendment has a legitimate expectation of privacy in the invaded place.'" *United States v. Ulbricht*, No. 14-CR-68, 2014 WL 5090039, at *5 (S.D.N.Y. Oct. 10, 2014), aff'd, 858 F.3d 71 (2d Cir. 2017) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)); *see also United States v. Watson*, 404 F.3d 163, 166-167 (2d Cir. 2005) (citing *See* Wayne R. LaFave, *Search & Seizure* § 1.3(f), at 87-88 (3d ed. 1999)).

When a defendant moves to suppress evidence that he contends derives from an illegal search, he "bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) (citations omitted); *see also, e.g. Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *United States v. Pers.*, No. 09-CR-983, 2011 WL 2019252, at *1 (S.D.N.Y. May 18, 2011). Where an illegal search has been demonstrated,

however, the government "has the ultimate burden of persuasion to show that its evidence . . . was not tainted through a connection to the illegally procured" evidence. *United States v. Sapere*, 531 F.2d 63, 66 (2d Cir. 1976).

Once a defendant demonstrates a legitimate expectation of privacy in the area searched, the burden shifts to the government to prove the legality of a warrantless stop. *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993) (citations omitted). To do so, the government must demonstrate that there was probable cause for the arrest. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (citing *United States v. Rivera,* 321 F.2d 704, 706 n. 1 (2d Cir.1963)).

> Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.

*Torraco v. Port Authority of New York and New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (citing *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004)) (internal quotation marks omitted).

## III. Discussion

It is not disputed that Mr. Fleming had a legitimate expectation of privacy in the clothing he was wearing at the time he was searched. *See generally United States v. Smith*, 621 F.2d 483, 486 (2d Cir. 1980). Therefore, the critical question

is whether Officer Rivera had probable cause to arrest defendant and conduct a pat down incident to his arrest.  This question can be analyzed in two key parts, (1) whether Detective Fusco had probable cause to issue the ICard which indicated that there was probable cause to arrest defendant, and (2) whether the arresting officers properly relied on the ICard to stop and search defendant.

### a. Detective Fusco Had Probable Cause to Issue The ICard

The Second Circuit has held, "absent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013)(internal quotations omitted); *see also Moore v. City of New York*, No. 13-CV-392, 2015 WL 1198084, at *4 (E.D.N.Y. Mar. 16, 2015) (finding probable cause to arrest a suspect based on a victim's identification of the suspect); *Nansaram v. City of New York*, No. 12-CV-5038, 2015 WL 5518270, at *3 (E.D.N.Y. Sept. 17, 2015)(adopting report and recommendation which found that defendants had probable cause to arrest a suspect for harassment based on a victim's identification of the suspect and granting summary judgment).

In *Moore v. City of New York*, the court noted that a detective issued an ICard for a suspect based on the testimony of a witness who identified the suspect, to "alert the NYPD that

there was probable cause to arrest [the suspect]." 2015 WL
1198084, at *2. The suspect was arrested six days after the
ICard was issued, although it is unclear whether the arrest was
precipitated by the ICard. *Id*. In *Moore*, the court found that
a witness's identification of a suspect on two separate
occasions was sufficient to provide probable cause for the
suspect's arrest. *Id*. (citing *Garrett v. City of New York,* No.
10-CV-2689, 2011 WL 4444514, at *4 (S.D.N.Y. Sept. 26, 2011)).
In *Garrett*, the court found a positive identification of a
suspect in a photo array and line-up constituted probable cause
to arrest the suspect. 2011 WL 4444514, at *4 (citing *Rush v.
Astacio,* 159 F.3d 1348, 1998 WL 480751, at *1 (2d Cir.1998)).

The undisputed facts show that the victim had a past
romantic relationship with defendant and shared two children
with defendant, such that it would be reasonable for a law
enforcement officer to find her identification of him as her
attacker credible. (ECF No. 22, Gov't. Opp. At 2.) The two
inconsistencies noted by defendant were the mode by which the
defendant threatened to kill the victim and her son, and the
issue of whether the defendant had the specific intent to break
the glass in the victim's door.

During her interactions with Officer Lawson, the
victim indicated that defendant texted her threatening to kill
her and her son, and also provided a written statement to

Officer Lawson at that time, indicating that defendant called her phone and threatened to kill her and her son, a minor, after she called 911. (Gov't. Opp. at 2.) During her phone interview with Detective Fusco, the victim indicated that defendant came to her home and threatened to kill her and her son before punching and breaking the glass in her front door and leaving. (*Id.* at 3.) Detective Fusco testified that the victim did not deny being texted or called with threats, and that he found the victim credible based on the testimony she gave on the phone and the initial complaint. (Tr. at 23:4-24:6, 67:23-68:17.)

There is nothing inherently inconsistent about the victim's reports to Officer Lawson and Detective Fusco that defendant texted the victim threats, called the victim to convey threats, and made threats in person when he pushed the victim and struggled with her to enter her home. Contrary to defense counsel's arguments, the victim recounted three different ways defendant threatened the life of the victim and her son, and these three descriptions hardly rise to the level of "vastly inconsistent statements." (ECF No. 34 at 2); *Crawford v. City of New York*, 477 F. App'x 777, 779 (2d Cir. 2012) (finding that "supposed inconsistencies in some of the [witnesses'] statements as to the details and precise dates of the assaults are minor discrepancies that do not negate probable cause"). "[W]hile vastly inconsistent statements by a victim might undermine the

victim's reliability, minor inconsistent statements do not automatically vitiate probable cause based solely on a victim's statements if the totality of the circumstances support probable cause." *Davenport v. City of New York*, No. 15-CV-5890, 2017 WL 4356883, at *11 (E.D.N.Y. Sept. 28, 2017) (collecting cases). The victim's failure to state each method of threat in each statement she gave to the police is insufficient to cast doubt on her consistent description of the events and identification of the defendant as perpetrator. Rather, given Detective Fusco's conversation with the victim, and the nature of the victim's relationship to defendant, it was reasonable for Detective Fusco to find the victim credible.

Defense counsel also argues that the lack of reference to broken glass or to the victim being pushed in the responding officer's typewritten report indicates an inconsistency in the victim's statements about what occurred. (*See* ECF No. 34 at 2.) At the suppression hearing, defense counsel cross-examined Detective Fusco on his ability and opportunity to assess the credibility of the victim. He particularly questioned Detective Fusco's failure to conduct an in-person interview of the victim and the responding officer on the scene of the domestic violence incident. (*See* Tr. 39:1-25,40:1-15.) Defense counsel also criticized the police department's failure to verify the authenticity or source of a photograph in the file depicting a

broken glass windowpane on the victim's door.  (*See Id.* at 44:6-
15, 45:1-22.)  At the hearing, the government entered into
evidence a photograph of the glass door panel that, according to
the victim, defendant struck and broke.  (*See Id.* at 27:15-
28:19 (government entering GX 3, a photograph of the glass door
panel, in evidence).)  Detective Fusco explained, however, that
he recalled the victim telling him defendant hit and broke the
glass after the physical tussle between defendant and the
victim.  (*See Id.* at 22:25-23:3, 45:23-46:5.)  Further,
Detective Fusco explained, the contemporaneous Domestic Incident
Report submitted by the responding officer at the scene of the
incident, Officer Lawson, contained the victim's narrative,
stating that defendant hit and broke the middle glass panel in
her door.  (*See Id.* 58:18-25, 59:1-13.)  A different individual,
PAA Newton, entered a truncated version of Officer Lawson's on-
site report into the ECMS system.  (*Id.* 31:12-33:23.)  PAA
Newton's failure to transcribe the victim's testimony word-for-
word in the typed report entered into the police database does
not render the victim's testimony false or detract from its
credibility.  (*Id.*)

Defendant correctly notes in his post-hearing brief
that "'[S]ubstantial evidence of the witness's own unreliability
that is known by the arresting officers could outweigh' probable
cause which would otherwise exist."  (ECF No. 34, Memo in

Further Support of Motion to Suppress, at 1 (citing *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000).)  Defendant has shown no evidence, or substantial evidence that the victim's account was reliable.  In *Wilson v. Russo*, there was significant exculpatory evidence contradicting the eyewitness's identification relied upon by the police as the basis for probable cause.  212 F.3d at 791.  One eyewitness failed to identify the individual that a different eyewitness had identified as the perpetrator in a photo array, there was a significant height discrepancy between the perpetrator the eyewitness described and the individual the eyewitness identified, and the eyewitness who identified the individual who was arrested testified that she saw the perpetrator in one location when the identified individual was in another location.  *Id*.  Despite these discrepancies, the court found that the exculpatory facts were "not strong enough to undermine a finding of probable cause."  *Id*. at 791-792.  There is no indication before the court that the alleged discrepancies are significant enough to render the victim's account unreliable.  Further, defendant has failed to show that Detective Fusco did not properly evaluate the victim's credibility.  Accordingly, the court finds that the NYPD had probable cause to arrest defendant based on the witness's account and her identification of the

defendant, and, by extension, there was probable cause to issue the ICard. *See Stansbury,* 721 F.3d at 90.

Defense counsel argues that even if Detective Fusco correctly found that the victim was credible, the information available to him was insufficient to support each element required to prove aggravated harassment and criminal mischief. Detective Fusco, however, was not required to adduce evidence supporting every element of both crimes to establish probable cause or to arrest defendant. *Ganek v. Leibowitz*, 874 F.3d 73, 86 (2d Cir. 2017) (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)). Further, when determining probable cause as to the *mens rea* element of a crime, the court must consider "the totality of the circumstances." *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018). "Indeed, the law is particularly tolerant with respect to the *mens rea* element of a crime on a probable cause showing." 874 F.3d at 86 (citing *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013)). Therefore, even if probable cause was required with regard to each element of a crime requiring *mens rea*, the *mens rea* can be derived from circumstantial evidence. *Alhovsky v. Paul*, 406 F. App'x 535, 537 (2d Cir. 2011)(finding probable cause as to the intent element of Placing a False Bomb or Hazardous Substance in The First Degree N.Y. Penal Law § 240.62, where "officers of reasonable competence could believe that an abandoned device

that looked like a bomb, was left at a Starbucks in New York
City, and was not claimed over a course of days, was place[d]
... under circumstances in which it is likely to cause public
alarm or inconvenience."); *United States v. Nelson*, 500 F. App'x
90, 94 (2d Cir. 2012)(finding probable cause where perpetrator
was found to have the requisite *mens rea* based on circumstantial
evidence).  Here based on the totality of the record before the
court, there was probable cause to arrest defendant for
aggravated harassment and criminal mischief.

Aggravated harassment in the second degree requires
physical injury or communication of threats using electronic
means.  *See* N.Y. Penal Law 240.30.  This includes communicating
or causing to be communicated "by telephone, by computer or any
other electronic means, or by mail, or by transmitting or
delivering any other form of communication, a threat to cause
physical harm to, or unlawful harm to the property of, such
person, or a member of such person's same family or household."
*Id*. at 240.30 (1).  Aggravated harassment also includes when,
"with the intent to harass, annoy, threaten or alarm another
person, [an individual] strikes, shoves, kicks or otherwise
subjects another person to physical contact thereby causing
physical injury to such person or to a family or household
member of such person."  *Id*. at 240.30 (4).  Aggravated

harassment in the second degree is a class A misdemeanor.  *See Generally Id*.

"A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: . . . Intentionally damages property of another person; or . . . Recklessly damages property of another person in an amount exceeding two hundred fifty dollars."  N.Y. Penal Law § 145.00 Criminal mischief in the fourth degree is a class A misdemeanor. *Id*.

The facts available to Detective Fusco in the handwritten Domestic Incident Report, in the typed statement in the Omniform System Complaint, and from Detective Fusco's interview with the victim established the following: defendant banged on the victim's window, attacked the victim, threatened the life of the victim and her son by phone and text, attempted to push his way into the victim's home, attacked and pushed the victim, broke a glass panel on her front door after being denied entry to the victim's home, and placed the victim in fear.  (*See* Tr. 22:24-23:7; GX 1; GX 4; ECF 36-1, Detective Fusco Telephone Interview Report.)  These acts are sufficient to establish probable cause for aggravated assault in the second degree under the physical injury prong and the electronic means prong.

The officer responding to the scene was told by the
victim that defendant first banged on the window and later
struck and broke the glass in the victim's front door during the
same encounter in which the victim stated that defendant
attacked her and tried to forcefully enter her home. The
totality of this information would give a reasonable police
officer probable cause to believe that defendant intentionally
damaged the victim's property and that there was probable cause
to arrest defendant for criminal mischief. Defense counsel's
theoretical argument, for which he cites no authority, that a
"person does not ordinarily punch a glass window with the intent
of breaking it [as] doing so would ordinarily do serious harm to
the perpetrator's hand," is insufficient to negate what a
reasonable officer might consider to be reasonable evidence of
intent to damage property. (*See* ECF No. 34 at 4.) Further,
because the *mens rea* element of a crime is often difficult to
ascertain, police officers are given great latitude when
determining probable cause in crimes requiring intent. *See
Ganek,* 874 F.3d at 86 (citation omitted). "[P]robable cause
does not require officers to rule out a suspect's innocent
explanation for suspicious facts." *D.C. v. Wesby*, 138 S. Ct. at
588; *see also* 874 F.3d at 86 (citing *Fabrikant v. French*, 691
F.3d 193, 216 (2d Cir. 2012)("Innocent explanation consistent
with facts alleged does not negate probable cause.").

**b. Officer Rivera Properly Relied on The ICard to**

**Establish Probable Cause for Arresting Defendant**

"The relevant inquiry [to determine the validity of an arrest] is into the information in possession of the arresting officer at the time of the arrest."  2015 WL 1198084, at *4 (citing *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y.1998)).  In the instant case, the relevant inquiry is whether Officer Rivera had sufficient knowledge to form probable cause for the search of defendant's person, the arrest of defendant and the seizure of evidence.

Law enforcement officers are permitted to search or arrest individuals based on information acquired from materials issued by other law enforcement officers, under the "collective knowledge doctrine."

> Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.

*United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001); *see also Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568(1971)("To prevent arresting officers from acting on the assumption that fellow officers who call upon them to make an arrest have probable cause for believing the arrestees are

perpetrators of a crime would, it is argued, unduly hamper law enforcement."); *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017)(citations omitted)("Even if the law enforcement officer actually conducting the search lacks the relevant facts to support probable cause, the search may nonetheless be permissible if the officer acted on the assessment or instructions of other officers who did have such facts."). Under this doctrine, a police officer may act reasonably in relying on information from other law enforcement officers, even if he is not personally aware of the facts that provided the probable cause underlying the information he received. *Colon*, 250 F.3d at 135.

Pursuant to the collective knowledge doctrine, the arresting officers had probable cause to stop defendant as (1) the ICard was properly issued pursuant to the March 31, 2018 Complaint, and (2) the arresting officers were entitled to rely on the ICard in concluding that there was probable cause to arrest defendant in connection with the March 2018 Harassment Complaint.

Defendant cites two cases, *United States v. Colon* and *United States v. Hensley*, 469 U.S. 221(1985), in support of his argument that the government must establish that the ICard was based on probable cause. (*See* ECF No. 21-1 at ¶ 7.) Taken together, however, the cases support the issuance of the ICard

and the arresting officer's reliance on the ICard.  In *Colon*,
the Second Circuit held that the knowledge of a 911 operator,
who received information from an anonymous caller sufficient to
provide reasonable suspicion supporting a stop and frisk but who
lacked training to assess whether reasonable suspicion existed,
could not be imputed to the police department dispatcher who the
operator gave a less detailed account of the facts.  250 F.3d at
137-138.  The Second Circuit held that the collective knowledge
doctrine, which is "the undisputed proposition that knowledge
may be imputed among law enforcement officials," did not apply
to the 911 operator because the operator lacked specialized law
enforcement training.  *Id*. at 136–37.  The Second Circuit
explained that had the 911 operator conveyed all the facts to
the police department dispatcher, a law enforcement officer, or
the arresting officers, the officers could have concluded that
reasonable suspicion existed and a stop and frisk was
appropriate.  *Id*. at 138.

        In the instant case, Detective Fusco, a trained and
experienced law enforcement officer, entered a detailed
description of an incident which he assessed, in writing, as
providing probable cause for an arrest for aggravated harassment
in the second degree.  (ECF No. 22 at 3.)  Officer Rivera, also
a trained law enforcement officer, read the assessment, and
decided to patrol for defendant in connection with the conduct

described in the ICard.  (*Id*.)  Officer Rivera, working together

with other officers from the 73rd Precinct, and relying on the

information provided in the ICard, arrested defendant.  (*Id*. at

4.)

Hensley, another case cited by defendant, also

supports the collective knowledge doctrine.  In *Hensley*, the

Supreme Court held, "if a flyer or bulletin has been issued on

the basis of articulable facts supporting a reasonable suspicion

that the wanted person has committed an offense, then reliance

on that flyer or bulletin justifies a stop to check

identification."  469 U.S. at 232.  Further, the Supreme Court

explained,

> [A]ssuming the police make a *Terry* stop in objective
> reliance on a flyer or bulletin, we hold that the
> evidence uncovered in the course of the stop is
> admissible if the police who *issued* the flyer or
> bulletin possessed a reasonable suspicion justifying a
> stop . . . and if the stop that in fact occurred was
> not significantly more intrusive than would have been
> permitted the issuing department.

*Id*. at 233.

Defendant argues that, "the law is less than clear as

to whether reasonable suspicion [rather than probable cause] is

an appropriate basis for a *Terry* stop based on a non-

contemporaneous misdemeanor; [as] the Supreme Court has only

specifically authorized such an intrusion based on more

immediate criminal conduct, or a previously completed *felony*.

(*Id.* at 2 (citing *United States v. Hensley*, 469 U.S. 221 (1985); *see also United States v. Haynesworth*, 879 F. Supp.2d 305, 312 (E.D.N.Y. 2012) *aff'd*, 568 F. App'x 57 (2d Cir. 2014) (denying motion to suppress evidence recovered during a stop related to the investigation of a completed misdemeanor and noting issue remains open in the Second Circuit)).) Neither *Hensley* nor *Haynesworth*, prohibit stops and seizures in the case of misdemeanors. *Haynesworth* makes it clear that although "neither the United States Supreme Court nor the Second Circuit has imposed a bright line test for when a *Terry* Stop to investigate a completed crime is forbidden," the police stop challenged therein was permissible as, "the Government has a strong interest in solving crimes and . . . . larceny can pose a threat to public safety because the crime involves an inherent risk of confrontation." *See Haynesworth*, 879 F. Supp. 2d at 311–12 (internal citations omitted). A similar analysis could apply in the instant case, as the victim informed law enforcement officers that defendant physically confronted her, pushed her and tussled with her as he attempted to force his way into her home, struck and broke a glass panel in her door and threatened to kill her and her minor child. Further, the government alleges that there was probable cause for the search and seizure of defendant's person and property, and not just reasonable suspicion.

Additionally, New York courts have held that police officers had probable cause to arrest defendants on drug charges, including charges for possession of drugs, based on the collective knowledge doctrine, often referred to in the state context as the "fellow officer rule." *See e.g. People v. Soviero*, 772 N.Y.S.2d 710,711 (2d Dep't 2004)(denying motion to suppress and holding that a police officer had probable cause to arrest the defendant on drug charges where the officer received a radio alert from a fellow officer indicating the officer had observed the defendant smoking marijuana); *People v. Dobere*, 749 N.Y.S.2d 114, 117 (3d Dep't 2002)(finding probable cause under the fellow officer rule to stop a suspect for the purpose of arresting him for the sale of marijuana).

Based on the collective knowledge doctrine, Officer Rivera had probable cause to arrest defendant based on the ICard and the information available to Officer Rivera at the time of the arrest.

## IV. Conclusion

The government has established proper probable cause for Detective Fusco's issuance of the ICard and Officer Rivera's arrest of defendant. Defendant's Motion to Suppress Evidence is denied.

**SO ORDERED.**

Dated:     February 6, 2019
           Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge