```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA,
                                            MEMORANDUM AND ORDER
        - against -
                                            18-CR-197 (KAM)
WARREN FLEMING,
                        Defendant.

-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Before the court is a motion filed by Warren Fleming ("Defendant" or "Mr. Fleming"), who is currently serving a 65-month prison sentence at the Federal Correctional Institution located in Danbury, Connecticut ("FCI Danbury"), to modify his prison sentence under the First Step Act. Defendant moves for a modification on the basis of the global COVID-19 pandemic and his pre-existing medical condition (asthma). The Government opposes the motion. For the reasons herein, Defendant's motion is respectfully DENIED.

## Background

The court assumes the parties' familiarity with the relevant background in Mr. Fleming's case. In April 2018, police arrested Mr. Fleming in connection with an alleged domestic violence incident. (ECF No. 44, Presentence Investigation Report ("PSR"), ¶ 3.) Upon his arrest, officers

1

recovered a .380 caliber Bersa 85 semiautomatic pistol from Mr. Fleming's waistband, along with 11 twists and one Ziplock bag containing cocaine base, and $392 in cash.  (*Id.* at ¶¶ 5-6.)  In March 2019, Mr. Fleming pleaded guilty to one count of possession with intent to distribute cocaine base, and one count of use and possession of a firearm during and in furtherance of a drug trafficking crime.  (*Id.* at ¶¶ 11, 13, 19.)

On September 19, 2020, this court sentenced Mr. Fleming to five months' imprisonment as to the possession with intent to distribute count, and 60 months' imprisonment as to the possession of a firearm count, to be served consecutively. (Minute Entry, Sept. 19, 2020; ECF No. 53, Judgment.)  Mr. Fleming is currently incarcerated at FCI Danbury.  His time served dates to April 5, 2018, and he asserts that his release date is December 22, 2022.

On May 26, 2020, Defendant filed the instant motion to modify his sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 56, Defendant's Emergency Motion for Release from Custody ("Mot.").)  The court ordered the Government to respond by May 28, 2020, and the Government filed an opposition to Mr. Fleming's motion on that date.  (ECF No. 57, Government's Response in Opposition ("Opp.").)

**<u>Legal Standard</u>**

The First Step Act, 18 U.S.C. § 3582(c), or the so-called "compassionate release" statute, creates an exception to the general prohibition against modifying a term of imprisonment once it has been imposed. Pursuant to the First Step Act, defendants may move a court to "reduce" a term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

The relevant policy statement, U.S.S.G. § 1B1.13, allows the court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement." Additionally, in considering a sentence reduction, the court must apply the Section 3553(a) sentencing factors, including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (3) the need for the sentence imposed to protect the public from further crimes of the defendant, and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. §§ 3553(a), 3583(d)(1).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." *United States v. Schultz*, 2020 WL 2764193, at *2 (W.D.N.Y. May 28, 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

## Discussion

### I.   Exhaustion of Administrative Remedies

The Government argues that Mr. Fleming's motion is procedurally barred because he failed to exhaust his administrative remedies.  (Opp. at 6-8.)  Mr. Fleming applied to the Warden of FCI Danbury for compassionate release on April 23, 2020, and his request was denied on May 1, 2020.  (*Id.;* Opp., Ex. A.)  The Warden's denial stated that Mr. Fleming could "commence an appeal of this decision via the administrative remedy process by submitting [his] concerns on the appropriate

4

form (BP-9) within 20 days of the receipt of this response."
(Opp., Ex. A.) The Government argues that, in order to exhaust, Mr. Fleming had to follow the appeal process set forth in the Warden's denial. (Opp. at 6-7.) Mr. Fleming argues that he "clearly exhausted his administrative remedies" because "[m]ore than 30 days have elapsed since the time of Mr. Fleming's request" to the Warden. (Mot. at 7.)

Under the statute, a defendant may bring a motion for compassionate release upon "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." U.S.C. § 3582(c)(1)(A). The Government argues that this language requires a defendant to exhaust all possible administrative remedies, unless the warden fails to respond within 30 days, at which point a defendant can file a motion with the court. Conversely, Defendant contends that a defendant has the option either to fully exhaust available administrative remedies, or to simply wait 30 days after filing a request with the warden before filing a motion with the court.

Courts in this circuit are divided over the proper reading of the statute's exhaustion requirement, particularly in the context of the global COVID-19 pandemic. *See United States*

5

*v. Bolino,* 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) ("If the prison warden denies th[e] request, the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure.") *But see United States v. Haney*, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) ("[T]he statute does not necessarily require the moving defendant to fully litigate his claim before the agency . . . . Rather, it requires the defendant <u>either</u> to exhaust administrative remedies <u>or</u> simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court.") (emphasis in original).

The Second Circuit has not yet had occasion to resolve this dispute over the proper reading of the statute's exhaustion requirement. The court need not resolve it now in order to adjudicate Mr. Fleming's motion. For the reasons that follow, the court finds that his motion fails on the merits.

## II.  Grounds for Relief

It is Mr. Fleming's burden to show that there are "extraordinary and compelling reasons" that warrant a modification of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i); *see Schultz*, 2020 WL 2764193, at *2. The court will consider the circumstances presented by the global COVID-19 pandemic, the relevant policy statement, and the sentencing factors set forth in Section 3553(a), including: (1) the nature of the offense and the history of the defendant; (2) the need to afford adequate

6

deterrence; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

With respect to COVID-19, Mr. Fleming argues that (1) his facility, FCI Danbury, has been hit particularly hard by the pandemic (Mot. at 3-5), and (2) his asthma renders him particularly vulnerable (*id.* at 5-6). As of May 10, 2020, 77 inmates at FCI Danbury tested positive for COVID-19, and at least one had died. (*Id.* at 4.) The Government concedes that the facility is experiencing "a serious and active outbreak" of the disease, but notes that there were only 15 inmates and two staff members with "active cases" as of May 27, 2020.[1] (Opp. at 4.) It is also undisputed that Mr. Fleming has suffered from asthma since childhood. (*Id.* at 3.) According to the Centers for Disease Control and Prevention, "[m]oderate-to-severe asthma may put people at higher risk for severe illness from COVID-19."[2]

Because Defendant is incarcerated at a facility where COVID-19 is active, and he is potentially at a higher risk for

---

[1] As of June 1, 2020, according to the Bureau of prisons, there were 15 active cases among inmates and two active cases among staff at FCI Danbury. Federal Bureau of Prisons, "COVID-19 Cases," *available at* https://www.bop.gov/coronavirus/ (accessed June 1, 2020).

[2] Centers for Disease Control and Prevention, "Groups at Higher Risk for Severe Illness," *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (accessed May 28, 2020).

7

complications in the event he were to contract COVID-19, those facts weigh in favor of granting his motion. However, they do so only slightly, and they do not on their own constitute "extraordinary and compelling reasons" to modify Defendant's sentence, as required by the statute. *See United States v. Weingarten*, 2020 WL 2733965, at *3 (E.D.N.Y. May 26, 2020) (incarceration at facility with 48 total confirmed cases and 12 active cases of COVID-19 "not sufficiently compelling or extraordinary"); *Schultz*, 2020 WL 2764193, at *5 (asthma "does not constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13," which requires a "terminal illness" or "a serious condition, impairment, or age-related deterioration that substantially diminishes his ability to provide self-care").

Though Mr. Fleming may be at higher risk if he were to contract COVID-19, he has managed his asthma throughout the course of his life, including during his incarceration, with medication. (Opp. at 3.) Mr. Fleming's motion made no showing that his asthma is moderate or severe, or that there is any reason he will not be able to continue to provide self-care within the Bureau of Prisons facility. *See United States v. Gileno*, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying motion where defendant "has not shown that his medical issues, which remain largely the same as when he was sentenced,

8

'substantially diminish his ability to provide self-care' within the correctional facility"); *see also Schultz*, 2020 WL 2764193, at *7 ("a high-risk factor (asthma) coupled with incarceration in a proven hotbed facility that has seen hundreds of positive cases and multiple inmate deaths . . . alone, however, does not necessarily compel release"). The circumstances, therefore, weigh only slightly in favor of modifying Mr. Fleming's sentence.

All of the policy factors and Section 3553(a) factors, on the other hand, weigh heavily against modifying the sentence. Mr. Fleming received his sentence based on the court's analysis of those factors, and the court's considerations remain consistent. Most notably, Mr. Fleming's criminal history prior to the offense for which he was sentenced demonstrates a need for his incarceration to protect the public, as well as to deter similar criminal behavior. *See* U.S.S.G. § 1B1.13 (the court must consider whether Defendant is a "danger to the safety of any other person or to the community"); 18 U.S.C. § 3553(a)(2) (the court must "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant").

In 1990, Mr. Fleming was convicted of attempted robbery. (PSR ¶ 8.) In 1993, Mr. Fleming was convicted of criminal possession of a loaded firearm and criminal possession of cocaine. (*Id.*) Later in 1993, Mr. Fleming was convicted of

9

attempted robbery and criminal possession of a loaded firearm. (*Id.*) In 1996, Mr. Fleming was convicted of murder in aid of racketeering activity and aiding and abetting. (*Id.*)

Mr. Fleming's history of violent crime, which escalated over time despite prior terms of incarceration, demonstrates that his sentence was appropriate. The court recognizes that the aforementioned criminal incidents were, as Mr. Fleming argues, "long ago." (Mot. at 9.) But the court does not agree that Mr. Fleming is no longer a threat to the community. His current sentence resulted from yet another crime Mr. Fleming committed, in 2018, involving a firearm. *See United States v. Boyd*, 2020 WL 2732011, at *3 (S.D.N.Y. May 26, 2020) ("The history and characteristics of the Defendant also counsel against granting his motion.").

The court is concerned for all inmates and respects the challenges of incarceration during an unprecedented global pandemic, but the court must also consider the protection of the public at large. Mr. Fleming has served approximately 25 months of his 65-month sentence, and, despite his asthma and the presence of COVID-19 at FCI Danbury, he has not shown "extraordinary and compelling reasons" warranting a modification of his sentence.

10

## Conclusion

For the foregoing reasons, Mr. Fleming's motion is respectfully DENIED. Mr. Fleming has not made a showing of "extraordinary and compelling reasons" warranting a modification of his sentence. Though his asthma may place him at greater risk if he were to contract COVID-19, all of the other relevant factors weigh against a modification of his sentence.

**SO ORDERED.**

Dated:   Brooklyn, New York
         June 1, 2020

                                              /s/
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge